State, Respondent, v. Camara, Appellant.

*September 10—October 5, 1965.*

For the appellant there was a brief by *Robert L. Habush,* attorney, and *James M. Shellow* and *Shellow & Shellow* of counsel, all of Milwaukee, and oral argument by *Mr. Habush.*

For the respondent the cause was argued by *David E. Leichtfuss,* first assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Hugh R. O'Connell,* district attorney.

BEILFUSS, J. Appellant raises only two issues on this appeal: (1) Invalid denial of the preliminary examination, and (2) illegal search.

It is well established under Wisconsin law that the right to a preliminary examination is not a constitutional right, but a statutory right. *State v. Strickland* (1965), 27 Wis. (2d) 623, 633, 135 N. W. (2d) 295; *State ex rel. Offerdahl v. State* (1962), 17 Wis. (2d) 334, 336, 116 N. W. (2d) 809; *Thies v. State* (1922), 178 Wis. 98, 103, 189 N. W. 539.

Appellant contends, however, that he has met the requirements under the statute,[1] and that denial of the preliminary

---

[1] "955.18 PRELIMINARY EXAMINATION; WHEN A PREREQUISITE TO INFORMATION. . . .

"(2)(a) Upon good cause shown the trial court may in its discretion remand the cause to the magistrate for a preliminary examination, upon motion made pursuant to s. 955.09. Good cause means:

"1. Preliminary examination was waived; and

"2. Defendant had not had advice of counsel prior to such waiver; and

"3. Defendant denies that probable cause exists to hold him for trial; and

"4. Defendant intends to plead not guilty."

examination was error. The statute is couched in language conveying discretion to the trial judge. Thus, the trial court is not obliged to remand upon defendant's unsubstantiated allegations alone. But the appellant argues that permissive language is in fact mandatory when the statutes ". . . provide for the doing of acts or the exercise of power or authority by public officers, and private rights or the public interest require the doing of such acts or the exercise of such power or authority, . . ." 3 Sutherland, Statutory Construction (3d ed.), p. 86, sec. 5808. Appellant cites *Wauwatosa v. Milwaukee County* (1963), 22 Wis. (2d) 184, 191, 125 N. W. (2d) 386, in support of this rule.

A close reading of the rule and the cases indicates that the rule is designed for application when the statute reads "may," or contains some other permissive term. This statute reads ". . . the trial court may in its discretion. . . ." That the rule does not apply to a statute made expressly permissive by plain language appears in the *Wauwatosa Case* (p. 191): "Generally in construing statutes, 'may' is construed as permissive and 'shall' is construed as mandatory unless a different construction is demanded by the statute in order to carry out the clear intent of the legislature." Furthermore, the *Wauwatosa Case* must be distinguished upon the ground that it deals with administrative duties of municipal officers and not judicial discretion of a court. One can scarcely imagine language which more clearly spells out the intent of the legislature that the judge have discretion on the remand.

Since the remand is discretionary, we must determine whether or not that discretion was abused. While the exercise of discretion by the trial court must be grounded on some rational basis, the general rule is that an appellate court will not reverse the trial court unless an abuse of discretion is found. *Estate of Korleski* (1964), 22 Wis. (2d) 617, 622, 126 N. W. (2d) 492. The supreme court cannot

substitute its discretion for that of the trial court. *Estate of Korleski, supra; In re Johnson* (1960), 9 Wis. (2d) 65, 75, 100 N. W. (2d) 383.

The trial court had before it the uncontradicted statement of the district attorney that the defendant had had considerable experience before his court, and other courts, which was unsupported by affidavits, the statement of defendant's counsel that he needed the preliminary examination to adequately prepare for trial, and defendant's handwritten affidavit of prejudice. Upon these facts the trial court concluded that defendant's waiver of the preliminary examination was made intelligently. This decision, while not elaborately explained in the record, was not an abuse of discretion.

While a court may not take judicial notice of its records of convictions or appearances by the particular defendant before it for purposes of creating a "bad man" inference in determining guilt or innocence, the court may take judicial notice of its own records for purposes of creating an inference that the defendant is familiar with the procedure of that particular court. This inference bears on the issue of intelligent waiver. The trial court did not indicate in the record that it was taking judicial notice, but we conclude that that was the basis of the trial court's ruling.

In *Thies v. State, supra,* at page 103, this court stated the historical purposes for a preliminary examination:

"The object or purpose of the preliminary investigation is to prevent hasty, malicious, improvident, and oppressive prosecutions, to protect the person charged from open and public accusations of crime, to avoid both for the defendant and the public the expense of a public trial, and to save the defendant from the humiliation and anxiety involved in public prosecution, and to discover whether or not there are substantial grounds upon which a prosecution may be based."

Nowhere in any decided case of which we are aware is discovery by the defendant given as a reason for the existence

of the preliminary examination. Discovery, however, may be one of the valuable by-products of a preliminary examination from the defendant's point of view. Thus, the trial court could have inferred that defendant sought the preliminary examination not to avail himself of one of its traditional purposes, but to obtain discovery from the state, and that the statement by counsel was a concession by defendant that probable cause to hold him for trial did exist. Defendant's desire to prepare for trial indicates his belief that he would be bound over upon a finding of probable cause.

Finally, defendant's affidavit of prejudice in proper form indicates that the defendant was quite familiar with criminal law and procedure. From this combination of factors the trial court could infer that defendant intelligently waived his preliminary examination, and that he did not seriously contend that there was a lack of probable cause.

Appellant contends that the search of his premises was illegal because not incidental to a valid arrest. For a search incidental to an arrest to be legal the arrest itself must be legal, and for the arrest to be legal probable cause for the arrest must exist. *Ker v. California* (1963), 374 U. S. 23, 34, 35, 83 Sup. Ct. 1623, 10 L. Ed. (2d) 726; *Carroll v. United States* (1925), 267 U. S. 132, 155, 156, 45 Sup. Ct. 280, 69 L. Ed. 543.

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States* (1959), 361 U. S. 98, 102, 80 Sup. Ct. 168, 4 L. Ed. (2d) 134.

"Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime." *Browne v. State* (1964), 24 Wis. (2d) 491, 503, 129 N. W. (2d) 175, 131 N. W. (2d) 169.

The quantum of evidence required to establish probable cause is less than that which would justify conviction. *United States v. Ventresca* (1965), 380 U. S. 102, 107, 85 Sup. Ct. 1371, 14 L. Ed. (2d) 353; *Draper v. United States* (1959), 358 U. S. 307, 79 Sup. Ct. 329, 3 L. Ed. (2d) 327.

When Jagmin entered the rooming house, he possessed information that two men, one named Pablo Perez, were in the building and that they had some connection with the presence of the minors at the time and place in question. He also had information that the men had been to Chicago. When he met Perez his information was verified and increased. Perez acknowledged ownership of the car and told him that the other man, Camara, was upstairs cutting up dope. Armed with this information Jagmin went to Camara's room. Perez's warning in Spanish, which the officer partially understood, added a significant factor. Then the officer observed through the crack in the door activity which was consistent with the informant's statements. When Camara finally opened the door Jagmin identified himself and arrested the defendant.

*Draper v. United States, supra; Ker v. California, supra;* and *Wong Sun v. United States* (1963), 371 U. S. 471, 480, 83 Sup. Ct. 407, 9 L. Ed. (2d) 441, all hold that hearsay information may be used to establish probable cause. However, these cases also require that the hearsay be corroborated or substantiated in some way. In *Ker* and *Draper* the information from a reliable informant was corroborated by police observations. In *Wong Sun* the information was not from a reliable informant and was too vague to establish probable cause. Here the hearsay evidence was not from a known reliable informant; however, certain facets of the information possessed by the police officer at the time of arrest had been substantiated and corroborated by three other persons, and the remainder had been corroborated by the of-

ficer's own observations. Thus, where the police possess information which is corroborated by third persons and the observations of the police themselves, and the nature of that information is such that any reasonable police officer could believe that a felony is taking place, probable cause for arrest exists. This conclusion is bolstered by the fact that there was a probable risk that Camara would leave the premises and sell, or otherwise dispose of, the contraband if the police should leave to obtain a warrant. This additional factor may be considered in determining whether or not probable cause exists. *Ker v. California, supra,* page 40. This is not a case of mere suspicion, which is condemned, but one where the record reveals a totality of circumstances upon which a finding of probable cause may be grounded. The arrest being legal, there is nothing else on this record to taint the search incident to the arrest with unreasonableness.

Apart from justifying the search on the validity of the arrest to which it was incident, the search is clearly justified by defendant's consent. In *Barnes v. State* (1964), 25 Wis. (2d) 116, 121, 130 N. W. (2d) 264, we said:

"A search and seizure are not in violation of constitutional rights if the person freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied; the state has the burden of proving by clear and positive evidence that such consent was given. [Cases cited.]" See *Holt v. State* (1962), 17 Wis. (2d) 468, 117 N. W. (2d) 626.

This case is similar to *Barnes* in the statements made to the police, but there is no hint of coercion as was there present. Jagmin testified that he asked the defendant "if he had any drugs in his room and he answered, 'No, look around,' and lifted the mattress and pulled things out of his pockets." Similarly, Perez testified that the defendant denied possession of any narcotics and said, " 'If you think I got

some narcotics in here come in and look for it.' " The defendant himself was the only witness who testified to no consent. This record clearly demonstrates actual consent and an absence of coercion.

There being both probable cause for the arrest and consent to the search, the search is not unreasonable.

*By the Court.*—Judgment and orders affirmed.