STATE, Respondent, v. DOYLE, Appellant.
STATE, Respondent, v. GREENLEE, Appellant.

*Nos. State 22, 23. Argued October 4, 1968.—Decided October 29, 1968.*
(Also reported in 162 N. W. 2d 60.)

For the appellant William Doyle there was a brief by *P. G. McGill* and *Douglas S. Moodie,* both of Superior, and oral argument by *Mr. Moodie.*

For the appellant Richard Collins Greenlee there was a brief by *Powell, Gee & Powell,* and oral argument by *Lyman T. Powell III* and *John H. Hendricks,* all of Superior.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Joseph A. McDonald,* district attorney of Douglas county.

HANLEY, J. The following issues are presented on appeal:

(1) Was there probable cause for the arrest;

(2) was there a violation of due process by trying the defendants together;

(3) was defendants' right to effective counsel violated by appointing the same counsel to codefendants;

(4) was there sufficient evidence to support a verdict of guilty; and

(5) should a new trial be awarded in the interest of justice?

The first three issues involve constitutional claims which were not raised at the trial level.[1] The general rule regarding this court's initial review of alleged constitutional errors was set forth in *Bradley v. State* (1967), 36 Wis. 2d 345, 359, 153 N. W. 2d 38, 155 N. W. 2d 564:

"This question was raised for the first time in the briefs that are before us on this appeal. We have frequently said that even the claim of a constitutional right will be deemed waived unless timely raised in the trial court. . . . We have, however, concluded that this court may nevertheless decide a constitutional question not raised below if it appears in the interest of justice to do so and where there are no factual issues that need resolution."

There are no factual issues which need resolution in this case. On the other hand it does not appear that the interest of justice will be served by reviewing the alleged errors either. However, since we believe that trial counsel has been unnecessarily criticized by the defendants' briefs, we will discuss the alleged errors.

### Probable Cause.

The defendants contend that evidence which was admitted at the trial was obtained pursuant to an illegal

---

[1] The defendants have individual counsel on this appeal. Neither is represented by trial counsel.

search and seizure. It is conceded that a reasonable search and seizure pursuant to a lawful arrest is valid without a search warrant. *State v. Phillips* (1952), 262 Wis. 303, 55 N. W. 2d 384; *State v. Kroening* (1956), 274 Wis. 266, 79 N. W. 2d 810, 80 N. W. 2d 816. However, we stated in *State v. Camara* (1965), 28 Wis. 2d 365, 373, 137 N. W. 2d 1:

". . . For a search incidental to an arrest to be legal the arrest itself must be legal, and for the arrest to be legal probable cause for the arrest must exist."

This court recently discussed the issue of "probable cause" in *Kluck v. State* (1967), 37 Wis. 2d 378, 389, 155 N. W. 2d 26:

"Probable cause exists if the facts and circumstances known to the police officer warrant a prudent man in believing an offense has been committed. . . . [citing *Henry v. United States* (1959), 361 U. S. 98, 80 Sup. Ct. 168, 4 L. Ed. 2d 134]. Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime."

Support for the above conclusion is found in *State v. Camara, supra,* and *Browne v. State* (1964), 24 Wis. 2d 491, 129 N. W. 2d 175, 131 N. W. 2d 169, certiorari denied, 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. 2d 706.

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States* (1949), 338 U. S. 160, 175, 69 Sup. Ct. 1302, 93 L. Ed. 1879.

The facts and circumstances constituting probable cause may be summarized as follows: A burglary of the Nummi Jewelry Store was reported to the police department. Minutes later police officers who were assigned

to investigate the alleged burglary and who were within a few blocks of the jewelry store came upon an automobile accident. In accordance with police department policy the officers stopped at the scene of the accident to determine whether anyone had been injured. Officer Gotelaere got out of the squad car and approached a 1958 Plymouth which was stopped in the middle of the intersection. The two young defendants were standing next to the Plymouth car. Officer Gotelaere observed that neither of these men was injured and then checked the other car involved. None of its occupants was injured either. In returning to his squad car Officer Gotelaere noticed a watch box on the pavement immediately below the right front door of the Plymouth. The officer picked up the box and found that it contained a new Bulova watch. The price tag of $69.95 was still on it. The officer then glanced into the car and saw a relatively large, partially covered box on the rear floor of the automobile which contained a large amount of new jewelry.

Officer Gotelaere immediately drew his revolver and ordered the two defendants to his squad car. With the assistance of Officer Moe, the defendants were frisked. Could anyone seriously contend that a reasonable and prudent policeman should not have immediately acted as Officer Gotelaere did in this instance?

Defendants do object, however, on the grounds that there was no way to connect them with the automobile and that they were never told that they were under arrest. It does not appear in the record that the officer ever asked the defendants if they had been in the automobile, nor was that issue of fact ever raised. However, it was established that the officer stopped specifically to determine whether anyone was injured. It was also established that the defendants were standing next to the damaged car. The officer was on his way back to his squad car when he noticed the jewelry. He had already determined that nobody involved in the accident was injured. Obviously,

the officer had previously ascertained that the defendants were the ones who were in the damaged Plymouth.

The defendants also contend that the manner of arrest was illegal. More particularly, they contend that they were not told of being placed under arrest.

This court discussed arrest in *Huebner v. State* (1967), 33 Wis. 2d 505, 516, 147 N. W. 2d 646:

". . . The central idea of an arrest is the taking or detaining of a person by word or action in custody so as to subject his liberty to the actual control and will of the person making the arrest. . . . But there must exist the intent to take into custody and a corresponding understanding by the person arrested that he is in 'custody,' although no formal declaration of arrest is required."

The defendants obviously knew that their liberty was restrained after the officer drew his gun and told them to place their hands against the squad car.

We find no merit to the defendants' contention that the arrest was invalid.

Both defendants' counsel on appeal have contended that trial counsel was incompetent for failing to move the trial court for a suppression of the evidence on the illegal arrest. A review of the facts leads us to believe, and we assume it led trial counsel to believe, that such an argument was completely without merit.

Trial counsel should not be subjected to criticism by appeal counsel for failing to make a meritless motion. Failure to comment on the propriety of such attacks would compel trial counsel to make a record of all the constitutional objections regardless of merit just to preserve his reputation. The record clearly indicates that trial counsel was more than competent in his objections to the admission of testimony into evidence.

### Separate Trials.

The issue of separate trials is raised only by the defendant Greenlee. He contends that his defense was prejudiced

because the only stolen property admitted into evidence was found on the person of Mr. Doyle. Mr. Greenlee contends that the state never established a connection between himself and Mr. Doyle and the admission of the stolen property into evidence amounted to an entire line of evidence which was not applicable to his trial.

The general rule on consolidation in Wisconsin is found in *Jung v. State* (1966), 32 Wis. 2d 541, 545, 145 N. W. 2d 684:

". . . A trial court has power to try cases together when the defendants are charged with the same offenses arising out of the same transaction and provable by the same evidence. *State ex rel. Nickl v. Beilfuss* (1962), 15 Wis. 2d 428, 113 N. W. 2d 103."

Ordinarily consolidation is a matter entirely within the discretion of the trial judge. *Cullen v. State* (1965), 26 Wis. 2d 652, 133 N. W. 2d 284.

Even when the offenses arise out of the same transaction, however:

". . . individual defendants may still obtain a severance if a joint trial would be prejudicial to their individual interests. 'Prejudice' in this sense, means than an entire line of evidence relevant to the liability of only one defendant may be treated as evidence against all defendants by the trier of fact simply because they are tried jointly." *State v. Nutley* (1964), 24 Wis. 2d 527, 543, 129 N. W. 2d 155.

Nevertheless, Mr. Greenlee's argument must fail because the state did prove a connection between the defendants. There was testimony that the defendants were standing together next to the wrecked Plymouth. The defendants were both young. Each of them carried a loaded and concealed weapon. Since the connection between the defendants was sufficiently established, the stolen property found on Mr. Doyle was relevant admissible evidence against Mr. Greenlee.

"The state may show possession of the stolen property by . . . another than defendant . . . if a conspiracy between them is proved, or if there is evidence tending to connect them as accomplices, or if the evidence shows that the other could not have come into possession except through defendant. Such evidence is not admissible, however, unless the other evidence tends to connect defendant with such other person and the commission of the offense." 12 C. J. S., *Burglary,* p. 723, sec. 50. *See also State v. Carvelo* (1961), 45 Hawaii 16, 361 Pac. 2d 45; *Murphy v. State* (1893), 86 Wis. 626, 57 N. W. 361.

Since the evidence complained of was admissible against either defendant separately, there was no prejudice in consolidating the trials.

### *Right to Separate Counsel.*

Defendant Greenlee also contends that his constitutional right to the assistance of effective counsel was denied when he was appointed the same counsel as defendant Doyle. As with the previous two constitutional objections there was no similar assertion at the trial level. The facts disclose that at the time of the appointment of counsel for defendant Greenlee it did not appear that there was going to be a conflict of interest nor did such a conflict arise during the trial. Both defendants pleaded not guilty and put the state to its proof. Defense counsel cross-examined for both defendants. Objections to the testimony and evidence benefited both defendants. Neither of the defendants took the stand so there was no attempt by either of them to put the blame on the other.

The principal ground for making the objection now is that trial counsel permitted the evidence taken from the person of Mr. Doyle to be admitted against both defendants. As has already been shown, the evidence was admissible against either defendant individually, so there was no prejudice in admitting it in the joint trial.

Moreover, even if this court should determine that the stolen property evidence was not admissible against Mr. Greenlee individually, this fact did not make the defenses of the defendants inconsistent so that they would require separate attorneys. Such evidence would only mean that the state had a better case against Mr. Doyle than against Mr. Greenlee.

". . . The fact that the case against one defendant was stronger does not mean their positions at trial were inconsistent." *Holloway v. State* (1966), 32 Wis. 2d 559, 569, 146 N. W. 2d 441.

### *Sufficiency of the Evidence.*

Both of the defendants contend that there was not sufficient credible evidence to prove all of the elements of armed burglary.

The trial court properly instructed the jury that the state was required to prove that each defendant intentionally entered the jewelry store, without consent, with intent to steal or commit a felony therein, and while armed with a dangerous weapon.

Defendant Doyle contends that there is no proof that he was armed with a dangerous weapon while the burglary was going on. Defendant Greenlee contends that none of the elements were proven as to him.

The evidence clearly shows that there was a forcible entry into the jewelry store, that the owner did not consent to the entry, and that property of great value was taken therefrom. The evidence further shows that both defendants were arrested three blocks from the store, that they were both armed with loaded pistols at the time of the arrest, that some of the missing property was found on Mr. Doyle, and that more of the missing jewelry was found in a car which the defendants were standing next to when they were arrested.

As pointed out previously, we believe a sufficient connection was shown between Mr. Doyle and Mr. Greenlee. Moreover, there was uncontroverted testimony that two men had been in the car when it crashed. The defendants were standing at the car when the police arrived. We believe this uncontroverted evidence is sufficient to show the defendants had joint possession of the car and its contents. While this evidence does not directly prove that the defendants entered the jewelry store with an intent to steal, it is valid circumstantial evidence of those elements.

". . . A finding of guilt [of burglary] can rest upon evidence which is entirely circumstantial. . . ." *Hemmis v. State* (1964), 24 Wis. 2d 346, 353, 129 N. W. 2d 209.

The element of being armed presents a more difficult problem. Again the testimony is uncontroverted that both defendants were armed at the time of their arrest. This is the only evidence from which the jury could have drawn an inference that the defendants were armed at the time of the burglary. This court must now decide whether such an inference is permissible.

We find no authority and none has been submitted where such an inference was permitted or denied.

The state, however, requests the court to recognize a "retrospective presumption of continuance." The more ordinary "presumption of continuance" was adopted by this court in *State ex rel. Coffey v. Chittenden* (1902), 112 Wis. 569, 577, 578, 88 N. W. 587:

". . . It [the presumption] is grounded on common knowledge that conditions of things, and character of persons, change gradually as a general rule, when they change at all. The exceptions only go to the weight of the presumption of continuity and class it with rebuttable presumptions, but it remains probative to some degree, in some cases, for a great length of time."

The presumption is also described in 1 Wharton's *Criminal Evidence* (12th ed.), p. 221, sec. 115:

"It is generally stated that the presumption of continuity is not retroactive, but is prospective only, and that when a fact or state of things is shown to exist at a particular time, there is no presumption that it was in existence at a prior time. However, circumstances may be such as to warrant an inference that an established fact must have existed for a definite period, or at a certain time in the immediate past."

We do not believe the presumption is applicable to the present situation, but we think that it is a permissible inference for a jury to find that the defendants were armed at the time of the burglary when they were, in fact, armed when apprehended only three and one-half blocks from the scene. It is highly improbable that defendants would have armed themselves after leaving undetected from the jewelry store.

### *New Trial in the Interest of Justice.*

A review of the record clearly indicates that both defendants were properly convicted of the offense charged. There is no showing that justice has not been well served by the convictions, nor is there any evidence to indicate that a different result would be accomplished by the granting of a new trial.

*By the Court.*—Judgments affirmed.