MADISON, Plaintiff in error, v. STATE, Defendant in error.

No. State 169. Submitted under sec. (Rule) 251.54 June 5, 1974.—Decided June 28, 1974.
(Also reported in 219 N. W. 2d 259.)

The cause was submitted for the plaintiff in error on the brief of *McMahon & Moroney* and *Patrick T. McMahon,* attorneys, and *Dennis P. Moroney* of counsel, all

of Milwaukee, and for the defendant in error on the brief of *Robert W. Warren*, attorney general, and *Christine M. Wiseman*, assistant attorney general.

CONNOR T. HANSEN, J. On October 7, 1971, Mrs. Janice Carol Allen and Vicki Hogue were accosted by a man, whom they later identified as the defendant, at 749 North 34th Street, Milwaukee, Wisconsin, at approximately 10 p. m. Mrs. Allen struggled with her assailant in an attempt to prevent him from stealing her purse. After the defendant had overcome her physical resistance and fled with her purse. Mrs. Allen immediately notified the police. Patrolmen Roger Keller and Raymond Kleppin of the Milwaukee police department stopped the defendant approximately fifteen minutes later at North 35th and Wells Streets. His appearance corresponded with the description of the assailant as related to the police by Mrs. Allen. Defendant was questioned and a search of his coat pocket revealed a cigarette lighter similar to the one which had been in the victim's purse. The officers also discovered $36 on top of a newspaper box which defendant had passed when he turned around in response to their call to him. The defendant had just been placed under arrest at North 35th and Wells when Mrs. Allen and her friend walked up and identified him as her assailant. Additional facts will be set forth in considering the issues raised on this review.

## *Issues.*

The following issues are presented:

1. Whether the evidence is sufficient to support the conviction?

2. Whether an individual has the right to raise constitutional errors on appeal where such errors were not raised in the trial court?

3. Whether the police officers unlawfully detained, searched, and arrested the defendant?

4. Whether the identification of the defendant shortly after the crime was unnecessarily suggestive and conducive to an irreparable mistaken identification?

5. Whether this court should grant a new trial in the interest of justice?

*Sufficiency of evidence.*

Mrs. Janice Carol Allen testified at the trial that on the evening in question, she and her friend, Vicki Hogue, were walking to her automobile which was parked in the 700 block of North 34th Street, when they noticed the defendant following them. The door of her automobile was stuck when she first attempted to unlock it with her key and the defendant walked up and stood between her and her friend "for quite some time." When she finally opened the door, she told her friend to get in and, as her friend sat down in the car, the defendant pushed the door closed and reached in front of Mrs. Allen and attempted to pull away her purse. She held tightly and the defendant pulled her around on the street until the link holding the strap broke, and the defendant fled with her purse. The purse contained, among other things, one $20 bill, one $10 bill, one $5 bill, and one $1 bill. This incident occurred at approximately 34th and Wells and the defendant ran north on 34th Street and ducked into an alley. Mrs. Allen testified that her assailant was a bearded black man who was wearing a gold turtleneck shirt and a very dark brown leather jacket. However, it was 10 p. m. and dark at the time, and Mrs. Allen testified that his jacket "could have been a black coat but it looked like a very dark brown coat." At trial, she made a positive in-court identification of the defendant, and on cross-examination she was further questioned as to

whether the defendant was truly her assailant and she testified ". . . I am positive because I saw him before he made his move to take my purse, he stood beside me for several minutes . . . I was looking at his clothes and his face because when a man stands next to me that I don't know, and I don't know what he wants I want to make sure what it [sic] looks like."

Mrs. Allen immediately phoned the police from a near-by residence and Patrolmen Keller and Kleppin, responding to the call, soon observed the defendant walking south on North 35th Street and crossing Wells Street, less than two blocks from the scene of the crime. Keller testified at trial that after the defendant had crossed Wells Street and proceeded a short distance further, he called to him to stop and come over. Defendant then grabbed ahold of a light pole which had a newspaper box attached to it and swung around the pole and walked back to Wells Street where the officers were waiting. He was wearing a gold colored shirt and black leather jacket. However, Keller testified at trial that he could not recall the type of collar on defendant's shirt that evening. A search of the defendant's jacket by Officer Kleppin uncovered the lighter in the left jacket pocket which Mrs. Allen later said had been in her purse. Keller testified that the defendant claimed the lighter was his. Mrs. Allen came upon the scene shortly after defendant had been stopped and identified the defendant as her assailant and the lighter as hers. A more thorough search was then conducted and the $36 in one, five, ten and twenty denominations was discovered on top of the newspaper box where the defendant had earlier swung around the pole. Keller testified that they later found the purse at 34th and Kilbourn Streets, one block north of the scene of the crime and in the same direction in which defendant had originally fled from the scene of the crime.

Defendant testified at trial that he had just emerged from a bus at 35th and Kilbourn when he found the

lighter on the street. He claimed he was walking south on 35th Street looking for a friend's house where he could get pills for venereal disease. He testified that he knew the house but not the address. However, he failed to find the house and was on his way to Wisconsin Avenue to catch another bus when he was stopped by the police. Although admitting he had a beard, the defendant claimed he was wearing a gold shirt with a regular collar and a black leather jacket on the night in question. He also testified that when he was searched, the police found on his person $36.92, and the lighter which he claimed he told the officers he had just found. He testified the money was not in his wallet, but in his pocket, and that his mother had given him $20 and a barber had recently repaid a debt of $18. No other witnesses were called for the defense.

In *Beavers v. State* (1974), 63 Wis. 2d 597, 217 N. W. 2d 307 (decided May 7, 1974), this court most recently explained:

> "In *State v. Chacon* (1971), 50 Wis. 2d 73, 74, 183 N. W. 2d 84, this court stated that it would not '. . . retry the case on the record to see if each member of this court is convinced of the guilt of the defendants beyond a reasonable doubt. . . .'
>
> "In *Fox v. State* (1973), 60 Wis. 2d 462, 466, 210 N. W. 2d 722, this court very recently explained:
>
> " ' . . . The test of the sufficiency of the evidence to convict is, on appeal, whether the evidence adduced, believed and rationally considered by the trier of fact was sufficient to prove the defendant's guilt beyond a reasonable doubt. Insufficiency of the evidence to warrant conviction requires holding that the evidence, when considered most favorably to the state and the conviction, be so insufficient in probative value that it can be said as a matter of law that no trier of fact acting reasonably could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt." ' "

*See also: Garrella v. State* (1973), 61 Wis. 2d 351, 212 N. W. 2d 101, and most recently *Clark v. State* (1974),

62 Wis. 2d 194, 197, 214 N. W. 2d 450; *State v. Van Ark* (1974), 62 Wis. 2d 155, 164, 165, 215 N. W. 2d 41.

The corresponding description of defendant's clothing, the victim's positive identification shortly after the crime and in the courtroom, the discovery of her lighter in his jacket pocket, and the discovery of her money on the newspaper box, make the case against the defendant overwhelming.

Defendant argues that although the cigarette lighter found on him belonged to the victim there was no testimony to challenge or dispute the fact that he had found it when he alighted from the bus. However, the fact is that all of the evidence and testimony was in conflict with this claim by the defendant. The credibility of witnesses is peculiarly within the province of the trier of fact and the judgment of an appellate court is not to be substituted for that of the trier of fact unless the evidence is inherently or patently incredible. *Brown v. State* (1973), 59 Wis. 2d 200, 208, 207 N. W. 2d 602. The evidence in this case was not " 'inherently or patently incredible.' "

### Right to raise errors not raised below.

Counsel for the defendant was appointed by this court to seek possible postconviction relief. Counsel now attempts to raise several issues regarding the propriety of searching and arresting the defendant and his identification by the victim shortly after the crime occurred. This is the first time any of these issues have been raised. It is understandable that counsel for the defendant at trial did not raise these issues because they are of no substance.

Sec. 971.31 (2), Stats., provides as follows:

"(2) Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute

on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached. The motion to suppress evidence shall be so entertained with waiver of jeopardy when it appears that the defendant is surprised by the state's possession of such evidence."

Recently, in *State v. Kuecey* (1973), 60 Wis. 2d 677, 680, 681, 211 N. W. 2d 453, it was held as follows:

"We consider that even if there were merit to the defendant's challenges to his arrest and the admission of evidence, they have not been properly raised. Such challenges must be raised by motion before trial, or be deemed waived.

"On a number of occasions, we have pointed out the distinction between subject matter jurisdiction and personal jurisdiction of the defendant in criminal proceedings. *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 45, 139 N. W. 2d 667; *Pillsbury v. State* (1966), 31 Wis. 2d 87, 92, 142 N. W. 2d 187; *Lampkins v. State* (1971), 51 Wis. 2d 564, 187 N. W. 2d 164; *State v. Chabonian* (1972), 55 Wis. 2d 723, 201 N. W. 2d 25. Here no issue is raised as to subject matter jurisdiction. The trial court had lawful authority to inquire into the charge of the crime, to apply the law and to declare the judgment and sentence. The defendant having entered a plea, with no timely objection having been made to personal jurisdiction, no defect in that respect can now be claimed."

In *Bradley v. State* (1967), 36 Wis. 2d 345, 153 N. W. 2d 38, 155 N. W. 2d 564, an eighteen-year-old mother had confessed to murdering her two infant children, and this court reviewed the voluntariness of that confession. Also raised therein was an issue as to whether a guardian *ad litem* should have been appointed for the defendant to appear for her prior to and during the course of the trial. On this issue, the court said:

"This question was raised for the first time in the briefs that are before us on this appeal. We have frequently said that even the claim of a constitutional right will be deemed waived unless timely raised in the trial court. *Cordes v. Hoffman* (1963), 19 Wis. 2d 236, 120 N. W. 2d 137; *Goyer v. State* (1965), 26 Wis. 2d 244, 131 N. W. 2d 888; *Rafferty v. State* (1966), 29 Wis. 2d 470, 138 N. W. 2d 741. We have, however, concluded that this court may nevertheless decide a constitutional question not raised below if it appears in the interests of justice to do so and where there are no factual issues that need resolution. There are none which would preclude us from considering the defendant's claimed right to have a guardian *ad litem.* However, under the facts of this case we fail to see that a meritorious argument has been presented. . . ." *Bradley v. State, supra,* pages 359, 359a.

The rule stated in *Bradley v. State, supra,* has been consistently followed by this court. *See: State v. Doyle* (1968), 40 Wis. 2d 461, 465, 162 N. W. 2d 60; *Flowers v. State* (1969), 43 Wis. 2d 352, 362, 363, 168 N. W. 2d 843; *State v. Clarke* (1970), 49 Wis. 2d 161, 174, 181 N. W. 2d 355; *State v. McDonald* (1971), 50 Wis. 2d 534, 537–539, 184 N. W. 2d 886; *Tatum v. State* (1971), 51 Wis. 2d 554, 556, 187 N. W. 2d 137; *State v. Morales* (1971), 51 Wis. 2d 650, 654, 187 N. W. 2d 841; *State v. Trailer Service, Inc.* (1973), 61 Wis. 2d 400, 408, 409, 212 N. W. 2d 683.

In the instant case, the defendant's preliminary hearing was held on October 20, 1971, and the victim testified at that hearing as to the circumstances of this crime and her on-the-scene identification of defendant. Defendant and his counsel were not surprised at trial about any of the facts regarding this identification, the search or the arrest. On November 2, 1971, the defendant's trial was scheduled for March 16, 1972. A subsequent request for adjournment was made by defense counsel and the trial was rescheduled for August 9, 1972. Although the state was prepared to proceed on that new date, defense coun-

sel's preference for a later trial date was again honored and the trial was reset for November 20, 1972. During this entire period and all during trial no objection whatsoever was raised as to the constitutional propriety of the search, the arrest or the identification. The circumstances of the arrest, search and the identification were well known to defendant and his counsel, and any constitutional defects in these respects, none of which appear from this record, were waived.

The court *may* consider constitutional errors not raised at trial if it is in the interest of justice to do so and no factual issues need to be resolved. However, this is not such a case. It is not in the interest of justice to do so in view of the lack of merit to these issues and the substantial evidence of guilt. Under the facts of this case, the defendant has waived any right to challenge any alleged unlawful detention, search, arrest or improper and suggestive identification.

### *Interest of justice.*

The defendant argues he should be granted a new trial in the interest of justice under this court's discretionary power articulated by sec. 251.09, Stats. In this case the real controversy has been fully tried and justice has not miscarried. ". . . A new trial will be granted only when it appears that the result will be different upon a retrial. . . . " *Garrella v. State, supra,* pages 353, 354; *Collings v. Phillips* (1972), 54 Wis. 2d 204, 211, 212, 194 N. W. 2d 677.

There is no doubt that a new trial in this case would bring no different result.

*By the Court.*—Judgment affirmed.